UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ESTRELLA JONES, § | |
|     *Plaintiff*, § | |
| § | |
| vs. § | CIVIL ACTION H-04-4719 |
| § | |
| MICHAEL GRIFFIN, ADMINISTRATOR, § | |
| NATIONAL AERONAUTICS AND SPACE § | |
| ADMINISTRATION (NASA), § | |
|     *Defendant*. § | |

**OPINION ON SUMMARY JUDGMENT**

In this federal employment Title VII suit, plaintiff Estrella Jones contends her employer, the National Aeronautics and Space Administration,[1] committed retaliatory acts against her in response to her filing an equal opportunity complaint. NASA seeks summary judgment (Dkt. 23-1) on all claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. The court has considered the parties' submissions and all matters of record and concludes that NASA's motion for summary judgment should be granted.

**I.    BACKGROUND**

Estrella Jones, a female of Filipino race and/or national origin, began working for NASA in 1982. Jones's tenure with NASA began at the GS-5 grade, and her present grade is GS-7. Jones filed a discrimination complaint on September 6, 2001. In March 2002 the NASA Office of Equal Opportunity Programs dismissed as untimely seven of her promotion

---

[1]    Michael Griffin is the present Administrator of NASA. Mr. Griffin's predecessor, Sean O'Keefe, was originally named as defendant. Mr. Griffin is automatically substituted as a party. FED. R. CIV. P. 25(d)(1).

claims and one claim for denial of opportunity to compete. Four other claims related to discrimination and harassment were accepted as timely, and suitable for further review. These claims included: denial of opportunities for professional development, unfair treatment and harassment when requesting leave, denial of monetary awards, and ignoring her suggestions. A retaliation claim was added during the pendency of the administrative proceeding. In October 2004, an administrative judge determined that Jones was not subjected to retaliation or to discrimination based on her race or national origin. Jones filed this lawsuit on December 16, 2004. Discovery is now complete and defendant has moved for summary judgment on all claims.

In response, Jones has abandoned her discrimination claims and expressly confined her reply to her retaliation claims. Jones also explicitly declared an intent to abandon her opportunity to respond to all other grounds for summary judgment that may have been asserted by NASA, including: 1) opportunity for professional development and promotion; 2) leave; 3) monetary awards; and 4) suggestions. (Dkt. 29-1, p. 6, 8).

## II.     ANALYSIS

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The party moving for summary judgment must demonstrate that there are no genuine issues of material fact. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). In responding to a properly supported summary judgment motion, the non-movant cannot

merely rely on its pleadings, but must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [s]he has made a charge . . . under this subchapter." 42 U.S.C. § 2000e-3(a); *see Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 175 (2005). A retaliation claim under Title VII has three elements: (1) protected activity under Title VII; (2) materially adverse employer action; and (3) a causal connection between the protected activity and the materially adverse retaliatory action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. __, 126 S. Ct. 2405, 2415 (2006); *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). The materially adverse action is to be judged from the standpoint of a reasonable employee or applicant. If the action "could well dissuade a reasonable worker from making or supporting a charge of discrimination," then it meets the materially adverse test. *Burlington*, 126 S. Ct. at 2409.

The untimely complaints of discrimination that were administratively dismissed by NASA are barred from consideration by this court. *See Pacheco v. Rice*, 966 F.2d 904, 905 (5th Cir. 1992). Jones suggests at great length that the untimely claims should be considered

3

as evidence of discriminatory animus. (Dkt. 29-1). But the sole cause of action Jones chose to pursue is retaliation, which is independent of, and substantially unrelated to, discrimination based on race or national origin. *Cf Burlington*, 126 S. Ct. at 2416 (limiting analysis of the second element of a retaliation claim by stating "the standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint."). Thus, the nature of the alleged discrimination that led to the filing of the charge is not in itself probative of retaliatory conduct.

### A. Protected Activity Under Title VII

Filing a formal equal opportunity complaint, as done by Jones, is activity protected by § 704 of Title VII. *See, e.g., Evans v. City of Houston*, 246 F.3d 344, 352-53 (5th Cir. 2001). Thus, the first element of the retaliation claim has been satisfied.

### B. Materially Adverse Employer Action

The second element is also present here. Jones asserts that because she filed an equal opportunity complaint, she was denied a promotion upon assuming additional job responsibilities that were once held by Frances Papac, a now retired employee.[2] Papac's pay grade was GS-8, while Jones's pay grade was GS-7 at the time she was assigned Papac's former responsibilities. Jones's pay grade still stands at GS-7, and she maintains that the failure to increase her pay grade amounts to a denial of promotion.

---

[2] Documents submitted by the parties have referred to the now retired employee as either "Frances Papac," "Fran Magers," or "Fran Magers (Papac)."

NASA responds that not all of Papac's responsibilities were assigned to Jones. Specifically, Jones's supervisor informed Jones that she would not be taking on all of Papac's responsibilities and would not take on the Debt Management Service (DMS) functions.[3] Jones contends that she carries responsibilities that are substantially similar to those of Papac, and that "80% of her current duties are occupied with performing the functions under the GS-08 position." (Dkt. 29-1, p. 11). Viewed in the light most favorable to Jones, there is a real possibility that a reasonable employee could have found the challenged action materially adverse. Accordingly, the second element of Jones's retaliation claim has also been satisfied.

### C. Lack of Causal Connection

Jones's case founders on the causal nexus requirement, for essentially three reasons: 1) lack of temporal proximity between Jones's complaints and NASA's alleged retaliatory acts; 2) no evidence that NASA reacted adversely to Jones's charges; and 3) NASA's stated reasons for maintaining Jones's GS-7 grade are unchallenged.

#### 1. Timing

Although not determinative, the timing of the putative retaliation may be an important factor in determining the presence of a causal link. *See, e.g., Swanson v. General Services Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997); *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994). Jones's first formal discrimination complaint was dated

---

[3] *See* July 18, 2003 e-mail (Dkt. 23-6, Attachment 5).

5

September 6, 2001, although her first documented complaint to a supervisor might have occurred as early as June 22, 2001. (Dkt. 29, Attachment 2).[4] No complaints other than these appear in the record. Jones asserts that the work responsibilities assigned to Jones by the July 18, 2003 e-mail[5] amounts to retaliation. Assuming, *arguendo*, the June 22, 2001 document was received by Jones's supervisor at or near that date, a period of approximately two years would have passed before the alleged retaliatory act occurred. Measured from the September 6, 2001 complaint, the time gap is approximately twenty-two months. This amount of time undermines any inference of a causal nexus. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (finding a period of twenty months between a protected activity and retaliatory act was too remote to suggest the existence of a causal connection). Even viewed in a light most favorable to Jones, the lengthy time gap between the discrimination complaints and the promotion denial effectively defeats any claim of causal connection, especially given the absence of other evidence of retaliatory motive (see below).

### 2. Neutral Reaction

An employer's hostile reaction to a discrimination complaint may be probative of a retaliatory motive. *See Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 43 (5th Cir. 1992)

---

[4] The unsigned June 22, 2001 document seems to be a running list of complaints and does not indicate the names of the author or intended recipient. Jones mentions the document in her response to NASA's motion for summary judgment, but fails to explain how the document might have come to the attention of her supervisors, or any other person. (Dkt. 29-1).

[5] Dkt. 23-6, Attachment 5.

(supervisor made disparaging remarks about EEOC charge at least twice a week). Jones has failed to demonstrate a negative reaction by NASA in response to her complaints. Jones points to a notation in an August 2001 performance evaluation that mentioned a potential attitude problem.[6] But that evaluation contained laudatory comments much like those in Jones's prior evaluations, including a final evaluation of "meets or exceeds expectations." (Dkt. 31, Attachment 19). A hand-written notation on the bottom of the evaluation, dated August 31, 2001, stated "appraisal session went well with good discussion; when 'counseling session' was referenced in writing above, Estrella [Jones] refused to sign unless it was completely removed." *Id*. The evaluation remained unsigned by Jones.

Despite the lone constructive criticism related to her attitude in the August 2001 evaluation, the positive comments and final rating in that evaluation were essentially identical to all prior <u>and</u> subsequent evaluations.[7] Because her evaluations were almost entirely consistent before and after any protected activities, there is no basis to infer a hostile reaction to the discrimination complaint on NASA's part.

---

[6] The evaluation, which covered the performance period from August 1, 2000 to July 31, 2001, reads in pertinent part: "In a counseling session on June 21, 2001, I expressed my perception to Estrella [Jones] about attitudes and interactions with others. Since that meeting, I have noticed improvement in Estrella's attitude, the way she conducts herself with clientele, and her interpersonal skills. The Fund Control group has received several compliments since our discussion." (Dkt. 31, Attachment 19).

[7] Jones's original complaint appears to suggest that the August 2000 evaluation includes some discussion related to attitude problems. (Dkt. 1) The August 2000 evaluation contains no mention of attitude problems. (Dkt. 31, Attachment 19).

A quick review of relevant dates demonstrates how NASA could not have reacted adversely to Jones's complaint. Initial discussions related to Jones's attitude took place during a June 21, 2001 counseling session. This counseling session occurred one day <u>before</u> Jones's informal complaint letter dated June 22, 2001. The counseling session was memorialized in Jones's August 2001 evaluation that is dated <u>before</u> Jones's formal September 6, 2001 complaint. Thus, it appears that the counseling session acted as a catalyst for Jones's complaints, not vice versa. Finally, the August 2002 evaluation, prepared after Jones's complaints, does not contain comments related to attitude, or any other comments that might be considered negative; to the contrary, this evaluation contains only positive comments. (Dkt. 31, Attachment 20).

### 3. Articulated Reasons

In order to establish her claim, Jones is required to show that the employer's articulated reasons for the promotion denial are a pretext for retaliation. *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 433 (5th Cir. 1995). Jones fails to offer any evidence that NASA's stated reason for maintaining her GS-7 pay grade might not be true.[8] NASA needed to "upgrade the billet [held by Papac] and hire an accountant to handle some of the technician duties, but more importantly to perform some of the more complex accounting tasks created by the IFMP system, as well as back up the group lead in some of her accounting duties."

---

[8] Jones's response to NASA's motion for summary judgment asserts that "the duties that cause the [Papac] position to be classified as a GS-8 were taken away." (Dkt. 29-1). However, some of the duties handled by Papac, specifically the Debt Management Service (DMS), were never assigned to Jones. (Dkt. 23-6, Attachment 5).

(Dkt. 23-6, Defendant's Exhibit 14). The new IFMP system was implemented agency-wide beginning in February 2003 and affected organizational responsibilities of the Fund Control Group where Jones worked. *Id*. Thus, due to organizational restructuring brought on by the new IFMP system, the more complex duties previously held by Papac were assigned to others deemed capable of completing more complex accounting tasks. Jones fails to undermine any of NASA's comprehensive, legitimate business reasons for not promoting her to a GS-8 pay grade. While Jones might have been taking on some new roles and responsibilities, these did not include the features of the job which warranted the higher pay grade classification. No evidence was presented by Jones that implied NASA's bases for maintaining her GS-7 grade were in any way retaliation in disguise or otherwise false.

### III.    CONCLUSION

In conclusion, Jones fails to demonstrate, and the facts do not support, a causal nexus between protected activities and the materially adverse employment actions. The temporal nexus between Jones's complaints and the alleged retaliatory actions is too remote. Jones has presented no proof that NASA reacted negatively in any way to her complaints. Nor has Jones presented evidence that in any way undermines NASA's legitimate reasons for maintaining her at the GS-7 grade. *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1048-49 (5th Cir. 1996) (finding an absence of a material fact because the plaintiff failed to provide evidence that the defendant's explanation was pretext). No substantial evidence exists in the

record upon which a reasonable fact-finder could render a retaliation verdict in Jones's favor. NASA is therefore entitled to judgment as a matter of law on this claim.

The court will issue a separate final judgment.

Signed on August 3, 2006, at Houston, Texas.

*Stephen Wm Smith*
Stephen Wm Smith
United States Magistrate Judge